Per Curiam.
 

 On the 15th of May, 1797, an entry was made in the office of Martin Armstrong in these words, “ Peter Fisher enters 274 acres of land in Sumner County, on the waters of Rocky Creek, adjoining a tract entered by Michael Shover on the west, and running west and south for quantity, warrant No. 4,718, location No. 7,235,” which was transferred on the books thus: “ Transferred to Joshua Claxton without recourse on me or my heirs, this 20th of February, 1806. P. Fisher, his mark.” A certificate of survey made the 29th of December, 1801, filed in the office the 12th of April, 1808, describes the land as lying in Sumner County, on the waters of Rocky Creek. “ Beginning on the * west boundary of a tract of land entered by Michael Shover, at a white oak and iron wood, running thence west, 224 poles, to a black oak in Archibald’s Taylor’s east boundary
 
 *490
 
 line ; thence south with said line, 194 poles, to a white oak; thence east, 224 poles, to a walnut on the head of a drain that runs into Rocky Creek, and in said Shover’s west boundary; thence north with said line, 194 poles, to the beginning.” To prevent a grant from issuing to Claxton, A. M‘Millan on the 7th of July, 1808, filed a
 
 caveat
 
 in the surveyor’s office, claiming the whole of the land surveyed for Claxton, by virtue of the following entry, to wit: “May the 27th, 1795, Martin Armstrong, assignee of John Ford, of William Brown, 640 acres joining Spencer’s 1,000 acre tract on the north side of Cumberland, beginning on his northern boundary and running as the law directs for complement. No. of warrant, 938 ; No. of location, 1,005.” Which entry, location, and every right, title, and interest Martin Armstrong had thereto, he alleges was sold and conveyed to him by deed of bargain and sale, dated 14th of March, 1806, and had been surveyed the 9th of September, 1799, in conformity with the entry.
 

 It is alleged in the caveat, first, that the entry made in the name of Martin Armstrong is older than -that made by Fisher, and covers the whole of the land included in Claxton’s survey. Secondly, that the entry made by Fisher, and transferred to Claxton, at and before the making the entry was legally and equitably vested in said M‘Millan, of which Claxton had notice. Thirdly, that if ever the entry made by Fisher was legal or available in law against the said entry of Armstrong, it has long since been destroyed by an arbitration between the parties, Fisher and Armstrong, of which Claxton had notice. On the return of the summons to the County Court of Sumner, at September term, 1808, Alexander M‘Millan amended his
 
 caveat
 
 by leave of the court, by adding the following words, * “ And said Alexander M‘Millan also claims the whole of the land so surveyed for said Joshua Claxton by virtue of two entries in the office of the principal surveyor of the first district on a military warrant, No 5,120, for 200 acres entered the 1st of August, 1807. The other is 440 acres, No. 2,706, dated the 17th of November, 1808, which two entries cover the whole of the land so surveyed for the said Joshua. After a trial in the County Court, this cause was taken by appeal to the Superior Court for Mero District, and from thence was transferred to the Circuit Court of Sumner County. On the death of Median, the suit was revived in the names of his heirs, and at April
 
 *491
 
 term, 1817, of that court, a jury impaneled and sworn to try such facts as should be submitted to them, found as follows: First, did Martin Armstrong make the entry marked A ? Answer: Yes. Secondly, was the survey marked B made agreeably to the entry ? Answer: Yes. Thirdly, has Martin Armstrong sold said entry and survey to the plaintiff? Answer: No. Fourthly, does not said entry and survey cover the land in controversy ? Answer: Yes. Fifthly, was riot the award marked C in favor of Martin Armstrong ? Answer: We consider it not sufficient to affect the title of P. Fisher. Sixthly, at what time did the plaintiff settle the land in controversy ? Answer: In 1804 or 1805. Seventhly, did not the plaintiff make the entries marked D and E, at the time named therein ? Do they not cover the land in controversy ? Answer: They do. Eighthly, has the entry of Peter Fisher been legally transferred to the caveator ? Answer : It has. Ninthly, has not the entry under which the caveator claims been removed by another entry being made on the same warrant, 19th of September, 1797 ? Answer : No. Eleventhly, had not Shover two entries in Sumner County, on Rocky Creek, on or before the 15th of April, 1797? Answer : He had. And to these facts, submitted on the part of the defendant, they gave the following answers: First, is not the entry of Martin * Armstrong, mentioned in the caveat, removed in consequence of the warrant being subsequently entered in 1808 ? Answer: It is. Secondly, was not the same warrant entered since the date of said entry, previous to and at what time ? Answer: It -was. Thirdly, are the objects called for in the entry of P. Fisher, recited in the caveat, identified; and were they notorious when said entry was made, and is the survey made agreeably to the calls of the entry ? Answer: They were. The court adjudged that the right of survey was in the defendant, and ordered the
 
 caveat
 
 to be dismissed at the costs of the caveator, who removed the cause to this court by writ of error.
 

 Upon this statement, by the finding of the jury on the first fact submitted by the defendant, the claim of the caveator on which he originally filed his
 
 caveat,
 
 and constituting the ground why a grant should riot issue to the caveatee, as assignee of Fisher, is vacated, and rendered inoperative for this purpose ; because it finds the said the claim, to wit, Armstrong’s entry on warrant 988, removed from its interference with the location of the caveatee, and the warrant
 
 *492
 
 itself elsewhere and subsequently in 1808. The finding on the second fact shows that this entry on warrant 988 was made since the entry of the caveatee. By the finding on the ninth fact, the entry of Peter Fisher has been legally transferred to the caveatee. And by the finding on the tenth fact, that it is not removed. These taken together wholly remove the original ground on which M‘Millan contested the right of survey to be in the caveatee. But admitting this to be the case, M‘Millan contends that the matter of his subsequent allegations, introduced upon amendment of his
 
 caveat
 
 at September term, 1808, with leave of the court exhibiting two entries, the one made in 1807, the other in 1808, conveying the whole of the lands surveyed for the caveatee, is good and sufficient to prevent a grant from issuing to the caveatee; because, * he says, first, that the said entry of Fisher is vague and not special upon the face of it; second, that if this should be adjudged against him, yet by the finding of the tenth fact, Shaver had two entries in Sumner County, on Rocky Creek, on and before the 15th April, 1797, the time of making the caveatee’s entry; that this disclosure, which would necessarily be made to a subsequent enterer to Fisher, in the progress of his investigation to ascertain the locality of Fisher’s entry, would render that uncertain and vague, which
 
 prima facie,
 
 on its face seemed to be certain; and therefore not furnishing a sufficient
 
 indicium,
 
 of appropriation, is to be totally disregarded by future appropriators. If Fisher’s entry is to be considered a nullity, the consequence contended for is correct, and the judgment ought to be reversed. First, as to the specialty of the entry on the face. Fisher enters 274 acres in Sumner County, on the waters of Rocky Creek, adjoining a tract entered by Michael Shaver on the west. This seems to contain reasonable certainty; the first directing call leads you to the county, the second to the place more circumscribed; the third call is locative, and fixes the particular spot appropriated, to wit, adjoining a tract entered by Michael Shaver on the west.
 

 This seems to be quite precise, and to leave but little latitude for the indulgence of the pleasures of the enterer in surveying. It is more precise than the decisions have required a special entry to be, under the land laws. The result to be deduced from these is, that if the locative call is contained within any part of the survey, the entry is special, though at one corner, and notwithstanding that
 
 *493
 
 thereby a space of land is protected from future acquirers, much larger than necessary for the satisfaction of the claim attached thereto. Fisher’s entry denies him half this latitude ; he is to join Shaver on the west, and run west, and thereby is precluded from all that lies east of this locative * call. Taking it on the face, the first objection fails. Secondly, Shover has two entries on Rocky Creek. This objection, which is latent on the face of the entry of the caveatee, is one which the caveator cannot avail himself of, from the finding of the jury on the third fact submitted by the defendant. They say the objects therein called for were identified and notorious at the time the entry was made, and that the survey thereupon is pursuant to its calls. It is difficult, under such circumstances, to conceive what possible injury can accrue to the caveator. The decisions consider that if the objects of an entry are identified and notorious, the subsequent appropriator making reasonable examination, has in his favor every mean that is necessary to direct his pursuit, and without gross negligence he may avoid the conflict of a prior claim. See Cooke’s Reports, 138,139, 287, 288. For anything that appears to the contrary, these two entries of Shaver’s might have occupied the relative position stated by the counsel upon the argument; that is, lying east and west of each other, and adjoining. In which case, in point of fact, no difficulty might occur operating on the other side. But extreme cases are not proper grounds from which general principles of law, applicable to the whole community are to be drawn. Common cases of common conduct, directed by reasonable care and industry, must furnish the cases of the rule, and from these data it is established, that an entry possessing calls identified and notorious at the making thereof, is an appropriation of the contents importing of itself sufficient notice and validity.
 

 Judgment of the Circuit Court affirmed.
 

 See the authorities in King’s Digest, 7893, 7957, 7965, 7980.